**SO ORDERED.**

**SIGNED this 4th day of January, 2017.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

```
            UNITED STATES BANKRUPTCY COURT
           MIDDLE DISTRICT OF NORTH CAROLINA
                  GREENSBORO DIVISION
```

In re:                              )
                                    )
Christopher Wayne Griffin,          )   Case No. 16-11017
                                    )
                                    )
           Debtor.                  )
                                    )
                                    )

### ORDER ON REAFFIRMATION AGREEMENT
### AND FOR DEBTOR'S COUNSEL TO SHOW CAUSE

THIS CASE came before the Court for hearing on December 13, 2016, on the Reaffirmation Agreement Between Debtor Christopher Wayne Griffin ("Debtor") and Ally Financial ("Ally") filed on November 22, 2016 [Doc. #10] (the "Reaffirmation Agreement"). Benjamin David Busch appeared on behalf of the Debtor.

### Procedural Background

The Debtor commenced this case by filing a voluntary petition under chapter 7 on September 23, 2016. Debtor's Statement of Intention for Individuals Filing Under Chapter 7 on Official Form 108 provides that the Debtor will retain the Vehicle by entering into a reaffirmation agreement. The meeting

1

of creditors under 11 U.S.C. § 341 occurred on October 24, 2016, after which the chapter 7 trustee filed his report of no distribution. The Debtor executed the Reaffirmation Agreement on November 4, 2016, which was within 30 days of the first date set for the meeting of creditors under section 341(a). Ally timely filed the Reaffirmation Agreement under Bankruptcy Rule 4008 on November 22, 2016.

## Findings of Fact

The agreement purports to reaffirm a debt as of the petition date in the amount of $34,016.49, to be paid at the rate of $596.43 per month for 72 months[1] with interest at the annual percentage rate of 8.29%. The debt is secured by a 2016 Chevrolet Equinox, VIN #2GNALBEK3G6337773 (the "Vehicle") with a retail value according to NADA of $20,550.[2] Therefore, in addition to the interest on the loan, the Debtor is proposing to pay over 65% more for the Vehicle than it is currently worth.

According to line 12 of Schedule I filed with the Debtor's petition, the Debtor's combined monthly income is $1,809.80. Schedule J reflects monthly expenses in the amount of $2,147.00, including the proposed payment on the reaffirmed debt, for a

---

[1] The agreement indicates that the Debtor has made at least one post-petition payment, and the amount to be paid under the Reaffirmation Agreement is $33,579.87 over 71 months.

[2] Consistent with practice in this district, the Court has taken judicial notice of the November, 2016 issue of the NADA Official Used Car Guide. The Reaffirmation Agreement indicates a value for the Vehicle of $20,850.

negative monthly income of $337.20.  The Cover Sheet for Reaffirmation Agreement on Official Form 427 (the "Reaffirmation Cover Sheet"), and the Debtor's Statement in Support of Reaffirmation Agreement indicate monthly expenses exactly equal to the Debtor's combined income of $1,809.80.  The Debtor provides no itemization for how this precise mathematical equality was reached.  Instead, his entire explanation for the reduction of expenses in response to question 8 on the Reaffirmation Cover Sheet states that he will have "less driving to save gas, less eating out and less shopping."

This explanation is facially inadequate.  It does not explain or itemize how the negative income of $337 is made up, nor does it explain how that delta coincidentally disappears to the penny.  The two expenses on Schedule J to which the explanation refers are insufficient to carry the weight.  Line 12 of Schedule J indicates expenses for transportation of $139, which includes maintenance and gas.  Line 7 of Schedule J indicates monthly food expenses of $200.  The Debtor cannot marginally squeeze a savings of $337.20 out of a total of $339 in expenses, where those expenses include his already meager food allowance and gas transportation necessary for his employment.

At the hearing, the Debtor offered further evidence for his explanation to bridge the gap between income of $1,809.20,

expenses of $2,147, and a $600 per month vehicle.  Debtor testified that he has reduced his cable television and internet bill by an additional $47, and has reduced his phone bill by $53, saving a total additional amount of $100.  He further testified that he will be paying off two loans against his 401k plan in February and March, 2017, which will save an additional $58 per month.  No evidence was offered in support of the stated expenses of $1,809.80, or how that figure was reached.  There was no evidence of any negotiation that occurred between Ally and Mr. Orcutt on behalf of the Debtor, and the Reaffirmation Agreement purports to reaffirm the debt according to its original terms.

    The Certification by Debtor's Attorney in support was signed "John T. Orcutt by R. L. Roland."[3]  Despite the lack of explanation for the reduction of expenses in the Reaffirmation Agreement Cover Sheet, Debtor's counsel signed the certification to be filed with the Court averring that: the agreement represented a fully informed and voluntary agreement by the Debtor; the agreement does not impose an undue hardship on the

---

[3] At the hearing, counsel indicated that reaffirmation affidavits for debtors represented by attorneys at the firm are executed out of the firm's Raleigh office, and that the signature should have indicated it was signed on behalf of the firm, rather than Mr. Orcutt individually.  Counsel did not offer any authority for an affidavit or certification to be executed by an entity other than an individual attorney, and the Court has not found any such authority.  The Court's records indicate that virtually all certifications filed by debtors who are represented by attorneys from the firm are executed in the same manner, indicating a standing practice to route these declarations through Raleigh to be signed by attorneys without personal knowledge of the underlying facts.

4

Debtor; and that he has fully advised the Debtor of the legal effect and consequences of the agreement and any default under the agreement.  Mr. Orcutt did not check the box indicating that a presumption of undue hardship had arisen because the Debtor's expenses were greater than his income, thereby representing to the Court the income and expenses reflected in the Debtor's statement in support were accurate and supported by evidence based upon Mr. Orcutt's knowledge after inquiry reasonable under the circumstances.  The Debtor testified that he has neither met nor spoken with Mr. Orcutt at any time, and the Court so finds.[4]

The Reaffirmation Agreement in this case imposes an undue hardship on the Debtor, and is not in his best interests.  The Debtor timely complied with the requirements of §§ 524(c) and 521(a)(2), and agreed to reaffirm the underlying debt consistent with its original terms.

## Discussion

Section 524(c) provides that an agreement reaffirming a dischargeable debt is enforceable if the agreement was made before the granting of the discharge, the debtor received the required disclosures at or before the time at which the debtor signed the agreement, and the debtor has not rescinded such agreement at any time prior to discharge or within sixty days

---

[4] The Debtor testified that he spoke with Mr. Busch after his meeting of creditors, at which point, Mr. Busch advised him about the legal effect and consequences of entering into a reaffirmation agreement.

after such agreement is filed with the court.  <u>See</u> 11 U.S.C. § 524(c).  In addition, if the debtor was represented by an attorney during the course of negotiating the agreement, the agreement must be filed with the court and accompanied by a "declaration or an affidavit of the attorney that represented the debtor during the course of negotiating the agreement . . . which states that" (1) the agreement represents a fully informed and voluntary agreement by the debtor; (2) the agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and (3) the attorney fully advised the debtor of the legal effect and consequences of the agreement and any default under such an agreement.  11 U.S.C. § 524(c)(3).  If the debtor's statement in support of the reaffirmation agreement indicates the debtor's monthly income is exceeded by his monthly expenses, a presumption of undue hardship arises under § 524(m), and the court must review a reaffirmation agreement even if it includes an attorney certification.  <u>See</u> 11 U.S.C. § 524(m)(1).  If the debtor does not rebut the presumption of undue hardship to the satisfaction of the court, the court may disapprove the agreement after notice and a hearing.  <u>Id.</u>  If no presumption of undue hardship arises under § 524(m)(1), and the debtor's attorney signs the affidavit contemplated by § 524(c)(3), the

Bankruptcy Code does not provide a mechanism for review of the agreement by the court.[5]

Local Rule 2090-1(c) requires that "[a]ny attorney who represents a debtor in a bankruptcy case shall remain the responsible attorney of record for all purposes including the representation of the debtor in all matters in the case until the case is closed or the attorney is relieved from representation upon motion and court order." The rule further specifically provides that the attorney shall represent the debtor in core matters before the Court, including reaffirmation agreements. Although the local rule requires the debtor's attorney of record to represent the debtor in connection with reaffirmation agreements, nothing in the rule requires debtor's counsel to sign the statement contemplated by 11 U.S.C. § 524(c)(3) if counsel cannot do so within the constraints of his judgment, the Federal Rules of Bankruptcy Procedure, and the rules of professional conduct.[6]

---

[5] The statement of income and expenses provided in a debtor's Statement in Support of Reaffirmation Agreement on Official Form B2400A is not necessarily binding on a court in determining whether a presumption of undue hardship has arisen under 11 U.S.C. § 524(m)(1). See In re Laynas, 345 B.R. 505, 513-15 (Bankr. E.D. Pa. 2006) (finding that a presumption of undue hardship arose where the debtor's Statement in Support of Reaffirmation Agreement did not provide a sufficient explanation of significant discrepancies between the statement and the debtor's schedules); and In re Vargas, 257 B.R. 157, 166 (Bankr. D. N.J. 2001) ("[J]udges have the power to independently review reaffirmation agreements to ascertain that reasonable bases exist for the accompanying declarations.").

[6] This Court previously has held that, where a debtor timely complies "with the requirements of sections 524(c) and 521(a)(2), and in all respects agree[s] to reaffirm the debt on the original terms of the contract," the

7

When advising debtors concerning reaffirmation agreements, the role of debtor's attorney emphasizes the attorney's role as counselor. As one court has explained:

> [D]ebtors' attorneys may misperceive their role in representing clients regarding reaffirmation agreements. It is not enough for an attorney to advise the clients of their rights and allow them to make a business decision. The attorney must exercise independent judgment. If the attorney cannot affirmatively state that the agreement does not impose an undue hardship on the debtor, the attorney must decline to sign a declaration attached to the agreement. By so doing, the attorney will assure judicial review and a hearing where the court will determine whether the agreement is in the best interest of the debtor.

Vargas, 257 B.R. at 160.[7]  Before signing an affidavit, the attorney has a "duty to independently verify the creditors' current security interests," and to confirm that the liens are unavoidable.  Id. at 165.  The attorney also must apprise and advise the debtor of other options available instead of reaffirmation.  Id.

---

automatic stay remains in effect, the personal property remains property of the estate, and any ipso facto clause in the security agreement or other document signed by the debtor is ineffectual so long as the debtor remains current in his payments under the applicable agreements – even if the Court disapproves the proposed reaffirmation agreement.  In re Perkins, 418 B.R. 680, 681-82 (Bankr. M.D.N.C. 2009) (citing, inter alia, Coastal Federal Credit Union v. Hardiman, 398 B.R. 161, 189 (E.D.N.C. 2008)).

[7] Nothing herein shall be construed to encourage or countenance counsel abdicating his duties to fully represent his clients in connection with proposed reaffirmation agreements, including signing the declarations contemplated by 11 U.S.C. § 524(c)(3) in appropriate circumstances.  See In re Adams, 229 B.R. 312, 315 (Bankr. S.D.N.Y. 1999) ("Where the debtor is represented by counsel, Congress transferred the Court's responsibility of assuring that the reaffirmation agreement is appropriate to the debtor's lawyer.").  The Court recognizes that reasonable minds may differ in some cases as to when counsel should sign the declaration.  This is not one of those cases.

After fully representing his client as required, any attorney deciding to sign the declaration or affidavit contemplated under 11 U.S.C. § 524(c)(3) is further constrained by his obligations to the Court under the Federal Rules of Bankruptcy Procedure. See Id. at 163 (finding that an attorney's duties in connection with execution of the certification or affidavit emanate from 11 U.S.C. § 524(c)(3) and Bankruptcy Rule 9011, and observing that "'widespread abuses in the day to day negotiation and enforcement of reaffirmation agreements . . . continues . . .' due to attorney indifference and court abdication"; "many attorneys have been perfunctorily executing their reaffirmation certifications . . ."; "[a]ttorneys should perform their duties pursuant to 11 U.S.C. § 524(c) more carefully and courts should monitor reaffirmation agreements to see that they do").

Attorneys should not have to be reminded that they must have personal knowledge of the facts set forth in affidavits signed by them and filed with the Court. See Adams, 229 B.R. at 317 (noting "what experienced trial lawyers well know – the formality of testifying under oath and the sobering reminder of the penalties of perjury focus witnesses, deponents and affiants on the importance of the issues at hand"). Nevertheless, this Court finds itself in the position of needing to issue just such a reminder.

Rule 9011 of the Federal Rules of Bankruptcy Procedure provides that, by signing a document to be presented to the court,

> an attorney . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Bankr. P. 9011.

At the hearing in this case, the Debtor testified that he never had met nor spoken with Mr. Orcutt, on behalf of whom the certification in this case was signed. Counsel for the Debtor indicated that all reaffirmation declarations are signed "out of the Raleigh office" of the firm. No evidence was offered to demonstrate that either Mr. Orcutt or Mr. Roland had personal knowledge of the statements certified to this Court, and the Debtor's testimony strongly suggests that they did not. Furthermore, the evidence offered in this case does not support the statements contained in the certification. Therefore, it appears that the attorney's certification violates Bankruptcy Rule 9011.

"[A]ttorneys play a critical role in protecting individual debtors from overreaching creditors." Adams, 229 B.R. at 317. Because of the burden imposed by reaffirmation agreements and

because such agreements defeat the important bankruptcy principle of giving debtors a fresh start, reaffirmation agreements are to be executed with "a maximum of formality." Id.

Courts have found bases to sanction entities for filing affidavits that do not comply with these requirements. In In re Brannan, 485 B.R. 443, 450-51 (Bankr. S.D. Al. 2013), the court granted class certification to permit claimants to seek sanctions against Wells Fargo Home Mortgage, Inc. f/k/a Norwest Mortgage, Inc. ("Wells Fargo") for presenting affidavits in support of motions for relief from stay where: (a) Wells Fargo failed to establish a procedure for production of affidavits that guaranteed the facts presented to a bankruptcy court were true and accurate; (b) the facts alleged in the affidavits were not reviewed carefully by affiants; (c) the facts relied upon by the court were untrue on a consistent basis; and (d) the persons executing the affidavits had no personal knowledge of that to which they averred. The declaration in support of the Reaffirmation Agreement is subject to these same infirmities. In such a case, the Court has the inherent and statutory power to impose sanctions. Id. at 451-53 (and cases cited therein). The Court further has the authority to order a disgorgement of fees under 11 U.S.C. § 329. See Vargas, 257 B.R. at 166-67.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.   John T. Orcutt and R. L. Roland shall appear in the United States Bankruptcy Court, Courtroom No. 1, 101 S. Edgeworth Street, Greensboro, North Carolina on January 18, 2017 at 10:00 a.m., and show cause:

   a.   Why John T. Orcutt and/or Law Offices of John T. Orcutt, PC should not be sanctioned for (i) violation of Rule 9011 of the Federal Rules of Bankruptcy Procedure; (ii) failing to have in place a procedure to ensure that declarations filed with this court are true and accurate; (iii) failing to review facts in a declaration filed with this Court; (iv) filing a declaration with inaccurate facts; and/or (v) signing a declaration to be filed with this Court without personal knowledge of its content; and

   b.   Why the declaration in support of the Reaffirmation Agreement should not be stricken, and, the Court having found that the Reaffirmation Agreement imposes an undue hardship on the Debtor and that it is not in his best interests, the Court should not disapprove the Reaffirmation Agreement and find that it is unenforceable under 11 U.S.C. § 524(c).

2. Sanctions to be considered under paragraph 1.a. above may include monetary fines and/or disgorgement of fees under the authorities cited herein.

3. Regardless whether the Court disapproves the Reaffirmation Agreement, since the Debtor timely complied with the requirements of section 524(c) and 521(a)(2), and in all respects agreed to reaffirm the debt on the original terms of the contract, the court adjudges that (a) the automatic stay remains in effect, (b) the vehicle referred to in the agreement remains property of the estate pursuant to section 362(h)(1)(B), and (c) any _ipso_ _facto_ clause in the security agreement or other document signed by the Debtor remains ineffectual, so long as the Debtor remains current in his payments and does not rescind the Reaffirmation Agreement.[8]

[End of Document]

---

[8] The Reaffirmation Agreement was filed with the Court on November 22, 2016. No discharge has been entered in this case. Therefore, the Debtor may rescind the agreement under 11 U.S.C. § 524(c)(4) at the later of the entry of discharge, or on or before January 21, 2017.